Gants, J.
The plaintiffs, Estella Minnefield, Florence Taylor, and Tracey Miller, are faced with the imminent loss of their benefits under the Transitional *518 Aid to Families with Dependent Children program (“TAFDC”).[1] All are the primary caretakers of children with physical or psychological problems that, the plaintiffs contend, render these children disabled and require them to stay at home with them. Because of their children’s disabilities and the demands these disabilities place upon them as the primary caretakers of their children, the plaintiffs contend that, for all practical purposes, they are unable to find and keep a job. While a caretaker, according to statute, is entitled to an exemption from the TAFDC work requirements if she must remain at home to care for “a disabled child or spouse,” G.L.c. 5, §110(e)(2), the Department of Transitional Assistance (“DTA") does not consider the plaintiffs’ children to be “disabled.” DTA’s regulations require a child to receive federal Supplemental Security Income (“SSI”) benefits under Title XVI of the Social Security Act before that child may be deemed “disabled,” and none of the plaintiffs’ children presently receive SSI benefits. The plaintiffs now move for a preliminary injunction enjoining the defendant, the Commissioner of DTA, from denying an exemption under the TAFDC program to caretakers of disabled children on the ground that the child is not receiving SSI benefits.
I. Standard for a Preliminary Injunction
In determining whether to grant a preliminary injunction, this Court must perform the three-part balancing test articulated in Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). First, the court must evaluate the moving party’s claim of injury and its likelihood of success on the merits. Id. at 617. Second, it must determine whether failing to issue a preliminary injunction would subject the moving party to irreparable injury — losses that cannot be repaired or adequately compensated upon final judgment. Id. at 617 & n. 11. Third, “(i]f the judge is convinced that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm, the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing pariy.” Id. at 617. In balancing these factors, “(w]hat matters as to each pariy is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits. Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue. ” Id. In an appropriate case, like this, “the risk of harm to the public interest also may be considered.” Brookline v. Goldstein, 388 Mass. 443, 447 (1983).
I will address first the likelihood of success on the merits.
II. Likelihood of Success on the Merits
In 1995, the Massachusetts Legislature enacted St. 1995, c. 5, §110, popularly known as the Welfare Reform Act, modifying the Aid to Families with Dependent Children (“AFDC”) program, “for the purposes of promoting the principles of family unity, individual responsibility and self-reliance and to structure financial and economic incentives and disincentives that promote such principles in the administration of said program.” St. 1995, c. 5, §110 (preamble). A central tenet of the Welfare Reform Act was to limit the receipt of welfare benefits to 24 months in any 60 month period unless the recipient falls within an exempt category or an extension of benefits is granted by the Commissioner. St. 1995, c. 5, § 110(f). To reflect the legislative theme that welfare benefits were intended to be temporary, the Legislature changed the name of the administering agency from the Department of Public Welfare to the Department of Transitional Assistance, St. 1995, c. 5, §41, and DTA changed the name of the state program to the Transitional Aid to Families with Dependent Children program.
Under the Act, TAFDC recipients with school age children who do not fall into any exempt category are required to participate in a work program in which they work at least 20 hours per week. St. 1995, c. 5, §110(g) and (j). If a recipient cannot find employment, she is required instead to participate in a community service program for 20 hours per week during the school hours of her children. St. 1995, c. 5, §110(j). Recipients who fail to satisfy this work requirement may be barred from receiving TAFDC benefits. Id.[2]
The Welfare Reform Act specifically included as an exempt category “recipients who must care for a disabled child or spouse. ' St. 1995, c. 5, §110(e). The Act treats a recipient who must care for a school-age “disabled child” differently from a recipient with a school-age child who is not “disabled” in at least three ways:
1. Recipients who must care for a “disabled” child are exempt from the 24 month limit on the receipt of TAFDC benefits. In other words, the time that recipients devote to caring for a “disabled” child does not count towards the 24 month limit. St. 1995, c. 5, §110(e).
2. Recipients who must care for a “disabled” child are exempt from the 20 hour work requirement. Id.
3. Recipients who must care for a “disabled” child receive more in benefits. Those with children who are not “disabled” receive 2.75 percent less than those caring for “disabled” children. St. 1995, c. 5, §110(e) and (d).
The Welfare Reform Act was hardly novel in providing special protection to those in need who must care for a disabled child. In 1969, the Legislature amended the statute detailing the duties of the Department of Public Welfare to declare:
In no case shall a recipient [of welfare benefits] be required to seek or accept employment as a condition for eligibility when a mental or physical disability of a dependent child requires presence at home.
*519 G.L.c. 118, §3. This provision remained unchanged with the passage of the Welfare Reform Act and its spirit was reflected in the exemption carved out in that Act.
While there is little legislative history to guide us, there are some elements of legislative intent regarding the special treatment afforded to welfare recipients who care for disabled children that can plainly be inferred from the language of the Welfare Reform Act and the earlier language of the 1969 amendment. First, the Legislature, protective of the best interests of disabled children, preferred that their caretakers be at home taking care of these children when such home care is essential and not be forced out of the home because of economic necessity. Second, the Legislature recognized that these caretakers cannot reasonably be expected to find, and keep jobs in view of their child care responsibilities at home. As Thomas Finneran, then Chair of the House Ways and Means Committee, declared during the House debate on the bill that became the Welfare Reform Act:
We propose exemptions for the disabled, those caring for the disabled and those with a child under two years old. These people cannot do anything to improve themselves to get jobs.
State House News Service (House), May 10, 1994 at p. 10. Third, because these caretakers are doing what society wants them to do and cannot realistically enter the workforce anyway, they should receive more in benefits than those who should and could find work outside the home.
The DTA is authorized by statute to “formulate the policies, procedures and rules necessary for the full and efficient implementation of programs authorized by the laws of the commonwealth and federal laws in the area of transitional assistance financial assistance [sic].” G.L.c. 18, §2(B)(a). Not only must the DTA be efficient in the implementation of transitional assistance programs, but it must also “provide the range of transitional assistance financial assistance [sic] services on a fair, just and equitable basis to all people in need of such services.” G.L.c. 18, §2(B)(d). Pursuant to this rulemaking authority, the Commissioner issued regulations to implement the exemptions in the Welfare Reform Act, including the exemption in St. 1995, c. 5, §110(e) for “recipients who must care for a disabled child or spouse.” 106 C.M.R. §203.100.
The Commissioner did not directly define the term “disabled” in the regulations. Rather, she recognized an exemption for “a grantee who is essential to the care of one of the following disabled persons living in the home:
1. a child,
2. the grantee’s spouse,
3. the child’s other parent, or
4. the parent(s) or grandparent(s) of the grantee, the grantee’s spouse, or the child’s other parent.
106 C.M.R. §203.100(A)(1)(b).[3] She then required grantees claiming such an exemption to provide certain verifications. 106 C.M.R. §203.100(B). However, the verifications differed depending on whether the grantee was seeking an exemption for the essential care of a child or whether she was seeking an exemption for the essential care of a spouse, parent, or grandparent. A grantee caring for a child may verify the disability of the child in only one way — by verifying “that the disabled child is in receipt of SSL ” 106 C.M.R. §203.100(B)(2)(a). A grantee caring for a spouse, parent, or grandparent may verify the disability of the adult in one of three ways: (1) by verifying that the adult receives either SSI for disability or Social Security for disability (“SSDI’j; or (2) if the adult himself receives TAFDC, by verifying that he meets the requirements for Physical or Mental Incapacity as set forth in 106 C.M.R. §203.530; or (3) if the adult does not receive TAFDC, by providing written verification of the adult’s disability from a competent medical authority, which generally is the adult’s doctor.[4] 106 C.M.R. §203.100(B)(3)(a).
The practical consequence of this difference in verification is that it is fair easier and faster for a grantee to obtain an exemption for caring for an adult than for caring for a child. With a child, by requiring that the child receive SSI, the Commissioner has effectively adopted the definition of “disability” applied by the federal government in determining eligibility for SSI benefits: there must be proof that the child suffers from (1) a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations and (2) that can be expected to cause death or that has lasted or can be expected to last continuously for at least one year, and (3) that prevents the child from engaging in substantial gainful activity. 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. §§416.906, 416.924a-416.926a. With an adult, there is no need that the adult qualify for or receive SSI for disability or SSDI. If the adult receives TAFDC, he may meet the far more lenient requirements for Physical or Mental Incapacity as set forth in 106 C.F.R. §203.530, which requires proof only that (1) the incapacity will last 30 days or longer and either (2a) will substantially reduce his ability to perform on a sustained basis one or more basic work activities or (2b) is equivalent to one or more of the Medical Standards set forth in 106 C.M.R. §203.540.[5] If the adult does not receive TAFDC, he will be found “disabled” when his doctor certifies in writing that his patient is “disabled.” Since the term “disabled” is nowhere defined, the doctor must define disability himself and declare whether his adult patient meets his own definition.
Not only is the definition of disability far more severe for children, but the procedure for being found “disabled" is also far more difficult and time consuming. According to the affidavit of Linda Landry, staff *520 attorney at the Disability Law Center in Boston, which was unrefuted, it takes the Social Security Administration an average of 116 days from the date of application to make the initial disability determination. Obtaining a decision upon reconsideration takes, on average, an additional 95 days; 13 percent of those initially denied benefits are found entitled to benefits upon reconsideration. If the applicant appeals an adverse SSI determination to an Administrative Law Judge, the applicant will wait an average of 296 days from the date of the appeal to the hearing, and another two to four months before receiving a decision. If the decision is favorable, which it is roughly 40 percent of the time, it takes from one to three months for the Social Security Administration to implement the decision so that the applicant can receive the benefits to which she is entitled. If the hearing decision is adverse and she appeals it to the Appeals Council, the applicant waits, on average, another 400 days for the decision. Consequently, even when a caretaker would be entitled to the exemption because the disabled child she cares for ultimately receives SSI, it may take months, sometimes years, before the child actually receives SSI and the caretaker can provide the Commissioner with the verification necessary to qualify for the exemption. In the interim, the caretaker’s family will receive 2.75 percent less in benefits, the 24 month time limit on benefits is allowed to run, and, unless the Commissioner grants a “good cause” exception to the work requirement,[6] the caretaker will be obliged to satisfy the work requirement or lose her benefits. Since the caretakers for disabled adults do not need to prove the receipt of federal SSI benefits to qualify for the exemption, they do not need to suffer these delays.
In addition, since the regulations require caretakers of disabled children to show that the children receive SSI to verify disability but require no such showing for disabled adults, the Commissioner has effectively delegated to the Social Security Administration the decision of who qualifies for a caretaker’s exemption when it comes to children but retained this decision when it comes to adults.
The crux of the plaintiffs’ argument is that the Commissioner acted outside her statutory authority by promulgating regulations — 106 C.M.R. §203.100(B) — that make qualifying for an exemption far more difficult for the caretaker of a child than for the caretaker of an adult. The plaintiffs, at least for now, do not press their claim that these regulations violate the due process or equal protection provisions of the United States or Massachusetts Constitutions. Rather, they rest this motion on the claim that these regulations are beyond'the Commissioner’s authority because they are in conflict with certain statutes that govern the administration of the TAFDC program. The plaintiffs allege that 106 C.M.R. §203.100(B) violates three statutes:
1. the exemption mandated in St. 1995, c. 5, §110(e)(2) for “recipients who must care for a disabled child or spouse”;
2. the prohibition in G.L.c. 118, §3 that “[i]n no case shall a recipient be required to seek or accept employment as a condition for eligibility when a mental or physical disability of a dependent child requires presence at home”; and
3. the directive in G.L.c. 18, §2(B)(d) that the DTA “provide the range of transitional assistance financial assistance services [sic] on a fair, just and equitable basis to all people in need of such services.”
There is no doubt that the Welfare Reform Act did not define the word “disabled” when it provided an exemption in St. 1995, c. 5, § 110(e)(2) for “recipients who must care for a disabled child or spouse.” Nor has any party proffered any statutory definition of “disabled” found elsewhere that must be used. There is also no doubt that the Act did not set forth a precise procedure to determine whether a child or spouse is “disabled.” Consequently, the Commissioner has the authority, indeed the responsibility, in her regulations both to define the term “disabled” for purposes of this exemption and to design a procedure that will determine whether a grantee’s child or spouse is “disabled" as defined. See, e.g., Grocery Manufacturers of America, Inc. v. Department of Public Health, 379 Mass. 70, 75 (1979). Considerable, but not unlimited, deference must be given to her efforts to implement the broad dictates of the Act. As the Supreme Judicial Court has declared:
‘A state administrative agency in Massachusetts has considerable leeway in interpreting a statute it is charged with enforcing.’ A. Celia, Administrative Law and Practice §747 (1986). Regulations properly adopted by an administrative agency stand on the same footing as statutes and all rational presumptions are to be made in favor of their validity. Such regulations are not to be declared void unless these provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate. These principles of deference, however, are not principles of abdication. When an agency’s interpretation of its regulation cannot be reconciled with the governing legislation, that interpretation must be rejected.
Nuclear Metals, Inc. v. Low-Level Radioactive Waste Management Board, 421 Mass. 196, 211 (1995) (citations omitted). See also Dowell v. Commissioner of Transitional Assistance, 424 Mass. 610, 612-13 (1997); Correia v. Department of Public Welfare, 414 Mass. 157, 165 (1993).
To determine whether 106 C.M.R. §203.100(B) can be reconciled with the Welfare Reform Act, this Court must look not only to the language of the Act but also to its purpose and history. Massachusetts Hospital Association, Inc. v. Department of Medical Security, 412 *521 Mass. 340, 346 (1992); Sterilite Corp. v. Continental Casualty Co., 397 Mass. 837, 839 (1986). Looking first to the language of St. 1995, c. 5, §110(e)(2), it is plain that the same word — "disabled"—is used to describe the type of child or spouse cared for by a TAFDC recipient that qualifies the recipient for an exemption. Where the same word is used in different parts of a statute, it “should be given the same meaning . . . barring some plain contrary indication.” Connolly v. Division of Public Employee Retirement Administration, 415 Mass. 800, 802-03 (1993). That principle of statutory construction is even more compelling where, as here, the same adjective modifies two different nouns.
In looking to the purpose and history of this provision of the Act, it is important to remember that, since 1969, when G.L.c. 118, §3 was amended to add that “[i]n no case shall a recipient be required to seek or accept employment as a condition for eligibility when a mental or physical disability of a dependent child requires presence at home,” the Legislature has declared that the mental or physical disability of a dependent child may require that child’s caretaker to remain at home and that, in such a circumstance, no caretaker should be threatened with the loss of welfare benefits if she chooses not to work but to remain at home with that disabled child. Since the Welfare Reform Act did not remove or amend this provision of G.L.c. 118, §3, it must be harmonized with St. 1995, c. 5, § 110(e)(2), which sets forth the exemption of such caretakers from the work requirement. That harmony is best achieved by recognizing that the Legislature intended that the word “disabled” be defined in terms of when a caretaker’s presence at home reasonably is required to care for a chronically mentally or physically ill child.
There is certainly nothing in either the language, purpose, or history of the Act to indicate that the Legislature intended to provide less protection to caretakers of disabled children who wish to remain at home than to caretakers of disabled adults. The Legislature has effectively provided a work exemption for caretakers of disabled children since 1969 and added a work exemption for caretakers of disabled spouses only with the passage of the Welfare Reform Act in 1995. It has never added a work exemption for caretakers of disabled parents and grandparents; that was added by the Commissioner in the regulations.
Consequently, the language, purpose, and history of the applicable statutory law reflect that the definition of disability and the means by which disability is determined must be, if not identical, at least comparable for children and adults. While the inherent differences between children and adults may necessitate some differences in definition and procedure, it is plain that the Legislature did not intend that it be significantly more difficult for the caretaker of a disabled child to obtain an exemption than the caretaker of a disabled adult.
The Commissioner contends that 106 C.M.R. §203.100(B) is a reasonable exercise of her rulemaking authority and well within the deference granted her to administer the TAFDC program. She contends that it is appropriate to adopt an existing set of rules and procedures to determine a child’s disability — the federal SSI program — rather than incur the expense involved in creating new state rules and procedures, and the bureaucracy to implement them, to accomplish the same result. She also argues that it serves the interests of the disabled child’s family to apply for and receive SSI benefits, because these benefits will not only satisfy the verification requirement but also provide an additional source of income to these families. She further contends that the receipt of SSI or Social Security disability benefits could not be required to verify the disability of all adults, because not all adults need, want, or are financially eligible for SSI or SSDI benefits. If, she maintains, the receipt of SSI or SSDI were the sole means of verification for adults, then some adults, no matter how disabled, could not obtain such verification and others would be applying for benefits they do not want or need simply to permit their caretaker to verify their disability.
For purposes of this motion, without deciding the question, I will assume that it was a permissible exercise of regulatory authority for the Commissioner essentially to adopt the SSI definition of disability and the SSI determination of disability rather than decide herself what constitutes a disability. I will also assume that it was reasonable for the Commissioner not to require every adult whose disability must be verified to apply for SSI or SSDI benefits. Yet, even granting those assumptions, the regulatory scheme set forth in 106 C.M.R. §203.100(B) cannot by any reasonable construction be reconciled with or interpreted in harmony with the legislative mandate because it makes it much more difficult for a recipient caring for a child to obtain an exemption than a recipient caring for an adult. Even when an adult should and could apply for SSI or SSDI benefits, 106C.M.R. §203.100(B) does not require him to be in receipt of such benefits. Rather, the caretaker for that adult can obtain an exemption in one of two alternative ways: if the adult receives TAFDC, by showing that the adult meets the more liberal requirements for Physical or Mental Incapacity in 106 C.M.R. §203.530; and if the adult does not receive TAFDC, by submitting written verification of disability from the adult’s doctor. If the standards truly were comparable, then the caretaker for a child would also be able to obtain an exemption through these or comparable alternatives.
The Supreme Court considered an issue analogous to this in Sullivan v. Zebley, 493 U.S. 521 (1990). Sullivan interpreted a federal statute that required that a child be considered disabled for purposes of SSI eligibility “ ‘if he suffers from any . . . impairment of comparable severity’ to one that would render an adult *522 ‘unable to engage in any substantial gainful activity.’ ” Id. at 529 quoting 42 U.S.C. §1382c(a)(3)(A). The Court in Sullivan held that the child disability regulations promulgated by the Secretary of Health and Human Services were inconsistent with the statutory standard of “comparable severity” because, unlike adults, children could be found disabled only if they had an impairment equal to a listed impairment. Children were denied the opportunity offered to adults to demonstrate that, although they suffered from a less severe impairment than a listed impairment, they nonetheless were disabled based on an individualized evaluation of their condition. Id. at 535-37, 540. Indeed, the Court observed that, because children had to meet a higher standard to be found eligible for SSI benefits, the same child who was unable to obtain SSI benefits at age 17 might be able to obtain such benefits upon his 18th birthday on the basis of the identical impairment. Id. at 536 n. 17.
In the case at bar, there is no Massachusetts statute expressly declaring that children’s and adults’ impairments of comparable severity must receive similar treatment in determining a caretaker’s receipt of a TAFDC exemption, but that is the plain implication of the language, purpose, and history of the state welfare statutes. Just as children had to meet a higher standard to become eligible for SSI under the Social Security regulations invalidated in Sullivan, so, too, under the DTA regulations, the caretakers of children effectively have to meet a higher standard to become eligible for a TAFDC exemption. In Sullivan, the Supreme Court found that the “Secretary’s approach to child disability is manifestly contrary to the statute” and affirmed a judgment that required the Secretary to give child claimants for disability benefits an opportunity for an individualized assessment of their functional limitations. 493 U.S. at 527, 541. Here, I find that the Commissioner’s approach to determining exemptions for caretakers of disabled children cannot be reconciled with the statutory mandate to provide a comparable definition of disability and a comparable means to determine disability for the caretakers of disabled children and adults.
HI. Irreparable Injury
Based on the unrefuted sworn assertions in the Verified Complaint, plaintiff Estella Minnefield is the primary caretaker of a nine year old boy (Quamaine) who is so troubled and whose behavior is so uncontrollable that even the special needs school he was attending required him to be removed indefinitely. She must be at home with him to ensure that he does not harm himself or others. She has furnished DTA with the medical documentation from her son’s doctor required under 106 C.M.R. §203.100(B)(2)(b) certifying that Ms. Minnefield is required to be at home full-time to provide essential care for Quamaine because of his severe psychological and behavioral problems. Ms. Minnefield applied for SSI for her son in April 1999, but has not yet received a decision. As a result, she has not received a TAFDC exemption. Since she had reached her 24-month time limit, her TAFDC benefits terminated in June 1999. She has reapplied for TAFDC benefits but the DTA representative told her attorney that Ms. Minnefield must meet the work requirement if she is to be reinstated and qualify for an extension. She receives benefits today only because the Attorney General agreed to continue her benefits pending this decision.
Plaintiff Florence Taylor is the mother of two sons, Doevony (age 2) and Anthony (age 12). Doevony’s birth mother abused cocaine and alcohol when she was pregnant, so Doevony tested positive for cocaine at birth.[7] He suffers from serious behavioral problems and has a medical condition that causes him to wear hip-to-toe braces. Anthony attends a school for children with special needs; he is twelve years old but performing at a first grade level. Doeveny attends the Family Development Center at Boston Medical Center from 10:00 a.m. until 3:40 p.m., but he has between ten and fifteen medical appointments each week, all of which Ms. Taylor must attend. She, too, has submitted a letter to DTA from Doeveny’s doctor documenting that it is essential that she remain at home to care for her troubled two year old son. The Department of Social Services applied for SSI benefits for Doeveny, but its application was denied on May 21, 1999. The denial is presently being appealed. Since Doeveny does not receive SSI benefits, Ms. Taylor does not qualify for the TAFDC exemption. She has already used her full 24 months of TAFDC benefits and has requested an extension from DTA, which is pending. If she receives an extension, she will have to satisfy DTA’s regulatory requirement of 35 hours of work or job search. Her benefits have yet to be cut off but, in the absence of preliminary injunctive relief, she faces the imminent loss of all her TAFDC benefits.
Plaintiff Tracey Miller is the mother of a two year old son (Jachai) with severe asthma and gas-troesophogeal reflux disorder. He frequently vomits, which causes him to panic and to have trouble breathing. As a result, he requires constant supervision. The child care center to which Ms. Miller senther son could not handle his asthma and vomiting attacks, so Ms. Miller’s brother agreed to care for Jachai while Ms. Miller worked. However, last winter, the attacks grew worse, and her brother was no longer willing to care for Jachai. Ms. Miller told her DTA supervisor that she could not continue working because of Jachai’s medical condition and her inability to obtain child care. On April 1, 1999, DTA sanctioned her by removing her from the TAFDC grant and reducing her family’s monthly benefits by $86 because she had failed to comply with the work requirement. In May 1999, DTA wrote her that the TAFDC benefits for her children would be terminated if she did not comply with the work requirement. Ms. Miller has furnished documentation from Jachai’s doctor that she must remain at *523 home to provide essential care to Jachai full-time and has appealed the proposed termination of benefits for her children on the ground that she has good cause for not complying with the work requirement. That appeal remains pending. In March 1999 she applied for SSI benefits for Jachai. Since her SSI application has yet to be acted upon, she is not eligible for a TAFDC exemption. If she loses her good cause appeal, all benefits will be cut off unless she returns to work. Even if she prevails in her good cause appeal and is excused from the work requirement, she will still face the 24 month cut-off of benefits.
Given the precarious financial state of these plaintiffs, the medical and psychological problems they must cope with, and the imminent danger (with Ms. Minnefield, the reality) that their TAFDC benefits will be cut off or, at the very least, will be cut off if they do not find work outside the home, I find abundant irreparable injury to the plaintiffs if they are denied preliminary injunctive relief. I also find some measure of irreparable injury to the Commissioner if such relief is granted, since there is no realistic chance that any benefits paid could be recovered if final injunctive relief were to be denied. Any reasonable balancing of the irreparable injury, given the strong likelihood that the plaintiffs will prevail, plainly favors the plaintiffs. The impact on the public fisc will be minimal and the little public money that will be spent will go only to those indigent families who submit documentation from their child’s physician certifying that the child is disabled and that it is essential that the caretaker be home to care for the child.[8]
IV. Crafting Appropriate Preliminary Injunctive Relief
This Court grants the preliminary declaratory relief sought by the plaintiffs: this Court declares preliminarily that 106 C.M.R. §203.100(B)(2), to the extent that it makes it far harder for a caretaker caring for a child to obtain an exemption than a caretaker caring for an adult, cannot by any reasonable construction be reconciled with or interpreted in harmony with the legislative mandate set forth in St. 1995, c. 5, §110(e), G.L.c. 118, §3, and G.L.c. 18, §2(B)(d), and therefore violates those statutory provisions.
Specifically, to obtain an exemption for the care of a disabled child, 106 C.M.R. §203.100(B)(2) requires a grantee to furnish verification that the child is in receipt of SSI, which means, for all practical purposes, that the Commissioner has adopted the SSI definition of disability as the only definition of disability and has made the SSI eligibility procedure the sole procedure available to a grantee to establish her eligibility for an exemption. To obtain an exemption for the care of a disabled adult, 106 C.M.R. §203.100(B)(3) permits a grantee to furnish verification either that the adult is in receipt of SSI or SSDI or, if the adult receives TAFDC, that he meets the requirements for Physical or Mental Incapacity specified in 106 C.M.R. §203.530 or, if the adult does not receive TAFDC, that a competent medical authority, based on that doctor’s own definition of disability, verifies that the adult is disabled. Consequently, when the grantee is caring for adults, the SSI definition of disability is not the only definition of disability but, for every adult, one of two alternatives: if the adult receives TAFDC, the alternative definition is the requirements for Physical or Mental Incapacity and, if the adult does not receive TAFDC, the alternative definition is the definition chosen by the competent medical authority. Moreover, when the grantee is caring for adults, the SSI eligibility procedure is not the sole procedure available to a grantee to establish her eligibility for an exemption but, for every adult, one of two alternative procedures: if the adult receives TAFDC, the DTA itself will determine whether the adult meets the requirements for Physical or Mental Incapacity and, if the adult does not receive TAFDC, the competent medical authority will determine whether the adult is disabled.
While this Court recognizes that the definition of disability and the procedure to establish disability need not be identical in view of the inherent differences between children and adults, this Court finds that both the definition of disability and the procedure to establish disability must be comparable. They are plainly not comparable under the present regulations.
To provide the plaintiffs with the practical relief that emerges from the declaratory relief, this Court orders the Commissioner to determine the plaintiffs’ eligibility for an exemption under St. 1995, c. 5, §110(e) in the same fashion as that eligibility would be determined if the plaintiffs’ cared for a disabled adult. Pragmatically, that means that the plaintiffs will be entitled to an exemption if they:
1. either provide written verification that their disabled child receives SSI or written verification from a competent medical authority (as defined in 106 C.M.R. 701.600) that their child is disabled; and
2. provide written documentation from a competent medical authority that specifies the severity of the disability, the reason that the grantee is essential to the care of the disabled person, and that the grantee is unable to be employed because she must be in the home to care for the disabled person.
Nothing in this Order should be construed to mean that the Commissioner is barred from issuing new regulations governing these exemptions. It only means that, if new regulations are promulgated, the definition of disability and the procedure to establish disability must be comparable for children and adults, so that the caretakers of children and the caretakers of adults stand in comparable positions when they apply for exemptions under St. 1995, c. 5, §110(e). This Order shall remain in force until new regulations in conformance with this decision become effective.[9]
*524 ORDER
For the reasons stated above, this Court ALLOWS the plaintiffs motion for a preliminary injunction as follows:
1. This Court DECLARES preliminarily that 106 C.M.R. §203.100(B)(2), to the extent that it makes it far harder for a caretaker caring for a child to obtain an exemption than a caretaker caring for an adult, cannot by any reasonable construction be reconciled with or interpreted in harmony with the legislative mandate set forth in St. 1995, c. 5, §110(e), G.L.c. 118, §3, and G.L.c. 18, §2(B)(d), and therefore violates those statutory provisions. While this Court recognizes that the definition of disability and the procedure to establish disability need not be identical in view of the inherent differences between children and adults, this Court finds that both the definition of disability and the procedure to establish disability must be comparable for children and adults, so that the caretakers of children and the caretakers of adults stand in comparable positions when they apply for exemptions under St. 1995, c. 5, §110(e).
2. To provide the plaintiffs with the practical relief that emerges from the declaratory relief, this Court ORDERS the Commissioner to determine the plaintiffs’ eligibility for an exemption under St. 1995, c. 5, §110(e) in the same fashion as that eligibility would be determined if the plaintiffs’ cared for a disabled adult. Pragmatically, that means that the plaintiffs will be entitled to an exemption if they:
a. either provide written verification that their disabled child receives SSI or written verification from a competent medical authority (as defined in 106 C.M.R. 701.600) that their child is disabled; and
b. provide written documentation from a competent medical authority that specifies the severity of the disability, the reason that the grantee is essential to the care of the disabled person, and that the grantee is unable to be employed because she must be in the home to care for the disabled person.
3. Nothing in this Order should be construed to mean that the Commissioner is barred from issuing new regulations governing these exemptions. It only means that, if new regulations are promulgated, the definition of disability and the procedure to establish disability must be comparable for children and adults, so that the caretakers of children and the caretakers of adults stand in comparable positions when they apply for exemptions under St. 1995, c. 5, §110(e). This Order shall remain in force until new regulations in conformance with this decision become effective.[10]

 One plaintiff, Minnefield, had lost her TAFDC benefits at the time the complaint was filed but, at the hearing on this motion, the Attorney General, on behalf of the defendant Commissioner, agreed to continue the benefits for all plaintiffs until this motion was decided by the Court.

 Pursuant to regulation, if the Commissioner extends the 24 month limit for TAFDC benefits, the recipient must work, look for work, or perform community service at least 35 hours per week. 106 C.M.R. §203.210(E).

 Care for a child and the grantee’s spouse are specifically declared in the Welfare Reform Act to qualify a grantee for an exemption from other requirements in the Act; it is not clear what the statutory authority is for the exemption given for care of the child’s other parent, or the parents or grandparents of the grantee, the grantee's spouse, or the child’s other parent.

 To qualify for an exemption for caring for either children or adults, the grantee must submit written documentation from a competent medical authority specifying the severity of the disability and the reason that the grantee is essential to the care of the person, and declaring that the grantee must be in the home to care for the disabled person. With respect to the care of school age children, the medical authority must also describe why the grantee must be home during normal school hours. 106 C.M.R. §203.100(B)(2)(b) and (3)(b).

 The requirements for Physical or Mental Incapacity are perhaps less demanding because they were designed to determine when a parent’s “physical or mental defect, illness, or impairment . . . substantially reduces or eliminates the parent’s ability to support or care for the child." 106 C.M.R. §203.530(A). Consequently, the Commissioner determines when an adult is “disabled” for purposes of the exemption (and therefore may need to be cared for at home) by using a standard designed to determine whether the adult could support or care for a child.

 The Commissioner may grant a “good cause" exception to the work requirement when there is a family crisis, an emergency, or some other compelling circumstance. 106 C.M.R. §§203.400(A)(1)(f), 207.190 (A)(2). However, even when an exception is found, the 24 month time limit on benefits continues to run and the recipient continues to receive 2.75 percent less than those with the exemption.

 Florence is Doeveny's adoptive mother; he was placed with her by the Department of Social Services when Doeveny was five days old.

 The Commissioner is poorly positioned to complain about any impact this decision may have on the public fisc because, without apparent statutory authority, she has authorized exemptions for the care of disabled parents and grandparents. This Order does nothing more than allow these plaintiffs to verify the disability of their children in the same way that the caretakers of disabled parents and grandparents may verify the disability of their elders.

 Since the motion for class certification is still pending, this Order should not at this time be construed to provide relief for the putative class. However, this Court assumes that the Commissioner will comply with the law as declared by this Court even when the individuals involved sure not plaintiffs in this action. Massachusetts Coalitionfor the Homeless v. Secretary of Human Services, 400 Mass. 806, 825 (1987) (“it has been our practice to assume that public officials will comply with the law declared by a court. . .”); Doe v. Registrar of Motor Vehicles, 26 Mass.App.Ct. 415, 425 n. 18 (1988) ((“courts . . . appropriately assume that public officials will act in accordance with their judicially defined duties, even when the individuals involved are other than the plaintiffs in the original action”).

 I am grateful for the exceptional quality of briefing and oral argument provided by counsel for both the plaintiffs and the defendant. They have brought honor to themselves, then-offices, and their profession by their conduct in this case.