KATHERINE CRANE & others[1] *vs.* COMMISSIONER OF PUBLIC
WELFARE
(and a companion case[2]).

Suffolk. Worcester.  April 1, 1985. — July 22, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Administrative Law*, Timeliness of appeal. *Public Welfare*, Emergency
assistance payments, Correction of underpayments, Sufficiency of claim
for relief. *Words*, "Administrative Error."

The Superior Court had jurisdiction to hear appeals from decisions of the
Department of Public Welfare denying plaintiffs' requests for recalcula-
tion of their Emergency Assistance benefits, where the actions of the
department's division of hearings in either dismissing the plaintiffs'
appeals or denying the requests for recalculation of benefits were final
decisions in an adjudicatory proceeding subject to judicial review. [441-442]
Applicants for Emergency Assistance benefits who had challenged a decision
of the Department of Public Welfare denying their requests for recalcu-
lation of benefits were not entitled under 42 U.S.C. § 602 (a) (22) (1982)
to a correction of the department's underpayment of benefits based on
an error affecting the plaintiffs which was identified by a judgment of
a Federal court on September 17, 1981, where the regulation implement-
ing § 602 (a) (22) restricted the applicability of the section to errors
identified subsequent to September 30, 1981. [442-443]
An error by the Department of Public Welfare in computing applicants'
Emergency Assistance benefits pursuant to an invalid regulation was an
"administrative error" within the meaning of 106 Code Mass. Regs.
§ 332.090 (G), entitling the applicants to correction of the department's
underpayment of benefits to them. [443-444]
Requests to the Department of Public Welfare by applicants for Emergency
Assistance benefits seeking a correction of underpayment of benefits to
them sufficiently informed the department of the relief sought. [445]

---

[1] 1,302 interveners. For the purposes of this appeal, the term plaintiffs
encompasses the plaintiffs and the interveners.

[2] Rosemary Leighton *vs.* Commissioner of Public Welfare. This plaintiff
commenced this action in Worcester Superior Court. It was consolidated
by stipulation of the parties with the judge's approval.

CIVIL ACTIONS commenced in the Superior Court Department on December 23, 1981, and January 22, 1982, respectively.

The cases were heard on a master's report by *William Highgas, Jr., J.*, sitting under statutory authority, and entry of judgment was ordered by *James P. Lynch, Jr.*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*William L. Pardee*, Assistant Attorney General, for Commissioner of Public Welfare.

*Barbara Sard* (*Lucy A. Williams* with her) for Katherine Crane & others.

NOLAN, J.  The Commissioner of Public Welfare (Commissioner) appeals from a Superior Court judgment which remanded the plaintiffs' cases "to the Department [of Public Welfare] with instructions to recompute and pay benefits, after holding such hearings as may be required, if any, to each of those who applied and were denied or had benefits withheld for Emergency Assistance benefits, between the dates of December 8, 1980 and September 17, 1981." The antecedent dispute that gave rise to this action concerned the method the Department of Public Welfare (department) used to determine eligibility for emergency assistance (EA) benefits.[3] See *Inger-*

---

[3] The EA program provides temporary "'emergency assistance to needy families with children' . . . to avoid destitution of such child or to provide living arrangements in a home for such child." 42 U.S.C. § 606(e)(1) (1982). It is an optional State program under Title IV-A of the Social Security Act. "[U]nder the EA statute, federal matching funds are available for emergency aid to intact families with children if threatened with destitution, regardless of the cause of their need." *Quern* v. *Mandley*, 436 U.S. 725, 729 (1978) (generally describing the EA program, *id.* at 727-729). The Legislature has chosen to adopt the EA program in Massachusetts. G. L. c. 18, § 2 (D) (1984 ed.). See *Ingerson* v. *Pratt*, No. 76-3255-S, slip op. at 1-10 (D. Mass. Sept. 17, 1981) (describing EA program generally and as adopted in Massachusetts.

*son* v. *Pratt*, No. 76-3255-S (D. Mass. Sept. 17, 1981). In determining the amount of EA benefits due an eligible applicant, the department deducted from the applicant's "initial need" figure[4] "the amount of federal energy assistance 'that has been or will be provided during the current heating season,' up to $600." *Ingerson* v. *Pratt*, slip op. at 9, quoting 106 Code Mass. Regs. § 309.060 (C)(2) (1979). As a result of this deduction, the plaintiffs received either less or no EA benefits. In a Federal class action, a judge of the United States District Court for the District of Massachusetts held that Federal law "prohibits a state from considering federal energy assistance provided under the [fiscal year] 1981 program in calculating EA benefits." *Ingerson* v. *Pratt*, slip op. at 63. Subsequent to that determination, the plaintiffs sought a recalculation of their EA benefits. The department denied the plaintiffs' requests. The plaintiffs then filed complaints in Superior Court which resulted in the judgment presently before us. We granted the Commissioner's application for direct appellate review.

On appeal, the Commissioner argues that the plaintiffs' claims are subject to administrative and judicial appeal periods which were not tolled by the pending Federal class action; therefore, the request of each plaintiff for a recalculation of EA benefits is barred by jurisdictional time limits. Additionally, the Commissioner argues that the Federal statute and Federal and State regulations which require the department to correct underpayments of benefits are not applicable in these circumstances. The plaintiffs disagree. For the reasons set forth below, we affirm the judgment of the Superior Court.

I. *Background.*

On March 24, 1980, certain individuals filed a supplemental complaint in the ongoing Federal class action which concerned

---

[4] "[T]he amount of the EA payment is the lesser of 'the amount needed to avert or eliminate the emergency' or the amount derived from a multi-step calculation. The first step of the latter calculation is to determine the family's initial need. [The department] defined this as 'the family's actual combined shelter costs' for . . . any four months . . . within 12 months of the EA application." *Ingerson* v. *Pratt*, slip op. at 9, quoting 106 Code Mass. Regs. § 309.060 (C)(2) (1979).

the administration of the EA program in Massachusetts. *Ingerson*, slip op. at 11. One of the claims asserted in that complaint alleged that the department, in calculating EA benefits, violated Federal law by deducting Federal energy assistance funds received by an EA applicant. *Id.* at 12. For the purposes of the supplemental complaint, the Federal judge certified a class defined "as the members of all families with children residing in Massachusetts who request EA after January 16, 1980, whose income is less than or equal to the AFDC standard of need and whose EA benefits will be delayed, reduced or denied due to the application of the [department's] challenged regulatory provisions." *Id.* at 14, 16. On September 17, 1981, the Federal judge issued a memorandum and orders which stated that the State regulation which required consideration of Federal energy assistance in calculating EA benefits under the fiscal year (FY) 1981 program "is declared invalid and the state defendants are to be enjoined from denying or reducing EA to present and future members of the supplemental class as heretofore defined by reason of federal energy assistance provided under the FY 1981 program for so long as Massachusetts continues to participate in the EA program and receive federal funds under the federal energy program of FY 1981."*Ingerson*, slip op. at 63.[5] On April 12, 1982, the United States District Court ordered the department to notify all who applied for EA between December 8, 1980, and September 17, 1981, of the result reached in *Ingerson*. The notice also

---

[5] Because of the restraints imposed by the Eleventh Amendment to the United States Constitution, the Federal court could not order retrospective relief. See *Edelman* v. *Jordan*, 415 U.S. 651 (1974). As a result of *Ingerson*, the department amended the offending regulation on October 22, 1981, effective September 17, 1981. State Letter 557 (October 22, 1981). 285 Mass. Reg. 1 (Nov. 5, 1981). The department did not provide independently for retroactive relief.

indicated that these individuals could attempt to obtain past EA benefits through State procedures.[6] *Id.*

The plaintiffs in this action each applied for EA between December 8, 1980, and September 17, 1981. Each received less or no EA benefits as a result of the department's deduction of Federal fuel assistance in calculating those benefits. None of the plaintiffs sought judicial review of this miscalculation under G. L. c. 30A, § 14 (1984 ed.). Rather, the plaintiffs sought relief through a supplemental complaint filed in *Ingerson*. The only pertinent factual difference in the plaintiffs' cases concerns their requests for a recalculation of EA benefits. The plaintiffs Crane, Chapline, Lewis, Armstrong, Bonner, and Leighton each requested a recalculation of their EA benefits based on *Ingerson* between October 21, 1981, and March 4, 1982. The plaintiffs' requests explicitly sought correction of EA underpayments. Each of the other 1,296 plaintiffs (notice plaintiffs) received from the department the notice required by *Ingerson*. Within thirty days of receipt of that notice, each

[6] "NOTICE ABOUT POSSIBLE EMERGENCY ASSISTANCE BENEFITS

"YOU MAY BE ELIGIBLE FOR ADDITIONAL EMERGENCY ASSISTANCE BENEFITS:

"1. If you applied for Emergency Assistance between December 3, 1980, and September 17, 1981, and
"2. You requested EA for a fuel, utility, or shelter payment, and
"3. Your request was denied, or you received less than what you asked for, and less than $500,
"you may be entitled to an Emergency Assistance payment.

"The federal court has ruled, in the case of *Ingerson* v. *Pratt*, that the Massachusetts Department of Public Welfare illegally deducted federal energy assistance (CAP) funds in computing EA benefits. No further relief is possible from the federal court, but you may now try to obtain benefits through state procedures.*

"If you meet these three conditions and you wish to obtain past benefits if legally possible, you should fill out one copy of the *Notice of Appeal* on the reverse side of this form and mail it to the Massachusetts Department of Public Welfare at [address]. *The appeal form must be mailed within 30 days of the date of this notice.*

"If you have any questions concerning this notice, contact your local legal services office or call the attorneys representing you in the federal court, at 617-482-0896.

"*N.B. The availability of such procedures is disputed and has not been established."

submitted to the department a "Notice of Appeal,"[7] which had accompanied the court ordered notice. The "Notice of Appeal" did not indicate explicitly that these notice plaintiffs were requesting a correction of an underpayment.

The department denied all of the plaintiffs' requests for recalculation of EA benefits. The plaintiffs timely sought judicial review of the department's action. A Superior Court judge referred the cases to a special master. The master recommended "that an Order enter, ordering: Remand of all the plaintiffs' cases to the Department with instructions to recompute and pay benefits, after holding such hearings as may be required, if any, to each of those who applied and were denied or had benefits withheld for Emergency Assistance benefits, between the dates of December 8, 1980 and September 17, 1981." The master based his decision on his conclusions that the plaintiffs were each entitled to a correction of an underpayment and that the plaintiffs' claims were timely because they were not required to seek review of the department's initial calculations

---

[7] *"Notice of Appeal*

"I, _____, of
    NAME

_____,  _____,
STREET or RFD                                        CITY

Massachusetts, _____, _____,
           ZIP                     TELEPHONE   NUMBER   if   any

hereby appeal to the Massachusetts Department of Public Welfare. My reason for appealing is that the Department illegally denied or reduced the Emergency Assistance benefits I requested, between December 8, 1980, and September 17, 1981, for a fuel, utility or shelter arrearage.

"I hereby authorize Legal Services to represent me.

_____
           SIGNATURE

"Please notify:

    *"Ingerson* Appeals
    Massachusetts Law Reform Institute
    2 Park Square
    Boston, MA 02116"

during the pendency of *Ingerson.* The judge confirmed the master's report and entered judgment based on the master's recommendation.

II. *Jurisdiction.*

In support of the Superior Court judgment, the plaintiffs argue, in part, that "the administrative time limit is in the nature of a statute of limitations subject to equitable tolling." In their view, such time limits were tolled in this instance by the pending Federal class action concerning the same claims. The department contends that time limits under G. L. c. 30A, § 14 (1984 ed.), and under the department's regulations, 106 Code Mass. Regs. § 343.245 (A) (1) (1979) (hearing request received more than thirty days after notice of action must be dismissed); 106 Code Mass. Regs. §§ 343.000-343.720 (1979) (fair hearing process) are "jurisdictional, and not subject to suspension or waiver on equitable grounds." Very recently, we stated that "[i]n most instances, failure to seek judicial review of an administrative decision within the time specified in a statute or rule will result in the dismissal of the appeal." *Clemons* v. *Director of the Div. of Employment Sec., ante* 174, 176 (1985), citing *Schulte* v. *Director of the Div. of Employment Sec.*, 369 Mass. 74, 79 (1975). We note, however, that recent decisions ameliorate the harshness of a jurisdictional view of such statutes and rules. See *Simpson* v. *Director of the Div. of Employment Sec.*, 391 Mass. 403, 405 (1984); *Cape Cod Bank & Trust Co.* v. *LeTendre*, 384 Mass. 481, 484 (1981). Accord *Clemons, supra* at 177.

The plaintiffs requested that the department recalculate their EA benefits.[8] The department denied the plaintiffs' requests. The plaintiffs appealed to the department's division of hearings. In Crane's case, a department appeals referee determined that she had jurisdiction of Crane's appeal but concluded that the "Department correctly denied [Crane's] request for a recalcula-

---

[8] The department contends that the "Notice of Appeal" forms did not indicate any request for correction of underpayments or recalculation of benefits. The effect of this "Notice of Appeal" is discussed below. The dismissal of the plaintiffs' requests by that notice was a final decision of the department.

tion of her EA benefits." The division of hearings dismissed the other plaintiffs' appeals based on a determination that the appeals were not timely. In all the cases, the department's notices indicate that the plaintiffs had a right to appeal the department's action under G. L. c. 30A. We conclude that the department's actions in either dismissing the appeals or denying the requests for a recalculation of EA benefits were final decisions in an adjudicatory proceeding subject to judicial review. See *Clemons, supra* at 177. Cf. *Borden, Inc.* v. *Commissioner of Pub. Welfare*, 388 Mass. 707, 716-717, cert. denied sub nom. *Formaldehyde Inst., Inc.* v. *Frechette*, 464 U.S. 936 (1983). Whether the plaintiffs are entitled to a recalculation of EA benefits is a matter which concerns the merits of the dispute rather than the right to judicial review. The Superior Court properly exercised jurisdiction over the plaintiffs' claims.[9]

III. *Correction of Underpayments*.

The department argues that the plaintiffs are not entitled to a correction of underpayments under either 42 U.S.C. § 602 (a) (22) (1982) or 106 Code Mass. Regs. § 332.090. We agree that 42 U.S.C. § 602 (a) (22) does not provide the plaintiffs a remedy in this case. In 1981, Congress adopted this section to "require States to correct overpayments and underpayments in all instances." S. Rep. No. 139, 97th Cong., 1st Sess. 441, reprinted in 1981 U.S. Code Cong. & Ad. News 396, 707 (S. Rep.). Under prior regulation, "States [were] given the option of whether or not to recoup overpayments. However, if States recover[ed] overpayments they must also pay underpayments." *Id*. The regulation which implements and interprets 42 U.S.C. § 602 (a) (22) restricts its applicability to AFDC. 45 C.F.R. § 233.20 (a) (13) (1984).[10] Furthermore, the regulation restricts

---

[9] As we conclude below that the plaintiffs are entitled to a correction of underpayments, we need not consider whether the administrative time limits affecting the department's initial EA calculations were tolled by the pending Federal class action.

[10] Arguably, the restriction of 42 U.S.C. § 602 (a) (22) to AFDC is invalid. See S. Rep. at 441. See also *Quern* v. *Mandley*, 436 U.S. 725, 741-742 (1978) (portions of 42 U.S.C. § 602 which only apply to AFDC indicated by a specific reference). But see S. Rep. at 519; H.R. Rep. No. 208, 97th Cong., 1st Sess. 983, reprinted in 1981 U.S. Code Cong. & Ad.

the applicability of this section to errors "identified subsequent to September 30, 1981." 45 C.F.R. § 233.20 (a) (13) (iii). The error affecting the plaintiffs was identified by the Federal court's judgment in *Ingerson, supra*, on September 17, 1981. We conclude, therefore, that the plaintiffs are not entitled to correction of underpayments pursuant to 42 U.S.C. § 602 (a) (22).

During all the time applicable to this action the department had in effect a regulation which required the correction of underpayments resulting from "administrative error." 106 Code Mass. Regs. § 332.090(G) (1979).[11] The judge interpreted this regulation as requiring correction of the underpayments made to the plaintiffs.[12] The department contends that the judge misconstrued this regulation. The department would interpret this regulation as applicable only to clerical errors. We disagree. "Ordinarily an agency's interpretation of its own rule is entitled to great weight. . . . However, this principle is one of deference, not abdication, and courts will not hesitate to overrule agency interpretations of rules when those interpretations are arbitrary, unreasonable or inconsistent with the plain terms of the rule itself." (Citations omitted.) *Finkelstein* v.

News 1010, 1345. Even if 42 U.S.C. § 602 (a) (22) is applicable to EA, it is unlikely that Congress intended to require the retroactive correction of all overpayments and underpayments. See 45 C.F.R. § 233.20 (a) (13) (iii). The plaintiffs, therefore, would not benefit from 42 U.S.C. § 602 (a) (22).

[11] "The Department will promptly correct underpayments to current recipients, when such underpayments result from administrative error. (1) Retroactive corrective payment shall be made only for the twelve (12) months preceding the month in which the underpayment is discovered; (2) For purposes of determining continued eligibility and amount of assistance such retroactive corrective payments shall not be considered as income or as a resource in the month paid nor in the next following month." 106 Code Mass. Regs. § 332.090 (G).

The department promulgated additional underpayment regulations restricted to AFDC and general relief. 106 Code Mass. Regs. §§ 306.210, 314.052, 269 Mass. Reg. 8, 17 (July 10, 1981). These regulations contain substantially the same language.

[12] The judge declared that the plaintiffs were entitled to correction of underpayments, but did not specify whether such correction was pursuant to 42 U.S.C. § 602 (a) (22) or 106 Code Mass. Regs. § 332.090 (G). We interpret this declaration as referring to both.

*Board of Registration in Optometry*, 370 Mass. 476, 478 (1976). "A general term of a statute may not be construed differently from its plain meaning, especially in the absence of any evidence of legislative or administrative intent so to construe it . . . and we may apply that same principle to the regulation." *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 782 (1980). The department, in its brief, recognizes that the plain meaning of "administrative" contemplates the department's promulgation and implementation of regulations. See Webster's Third New Int'l Dictionary 28 (1964).[13] The department argues, however, that in the context of this regulation the term is limited. Otherwise, the department contends, the regulation establishes "a remedy, subject to none of the conventional limits, for error, no matter how distant." This argument ignores the language of the regulation. It does not provide an open-ended remedy. Rather, the regulation only allows the correction of an error which occurred within "twelve (12) months preceding the month in which the underpayment is discovered." 106 Code Mass. Regs. § 332.090 (G) (1). Furthermore, if the department intended so to limit this regulation it could have adopted clear language to achieve that result. Both Mass. R. Civ. P. 60 (a), 365 Mass. 828 (1974), and Fed. R. Civ. P. 60(a) (1985), contain language which clearly limits the circumstances in which errors may be corrected. The department has failed to persuade us that the phrase "administrative error" was meant to have a more limited meaning in 106 Code Mass. Regs. § 332.090(G) than the plain meaning of that phrase. We conclude that the department's error in computing the plaintiffs' EA benefits pursuant to an invalid regulation

---

[13] An earlier decision of this court may suggest a more limited definition of "administrative." *Malden* v. *Metropolitan Transit Auth.*, 328 Mass. 491, 493-494 (1952). In that case, however, we examined that term within the context of a statute that indicated a legislative intent to narrow the meaning of that term. In the instant case, we are not persuaded that any such intent existed. Rather, we conclude that the plain meaning of "administrative" includes the department's action in promulgating regulations. See *Robinson* v. *Secretary of Admin.*, 12 Mass. App. Ct. 441, 444 n.6 (1981) ("a fee of general application, when fixed by administrative action, is in its nature a regulation").

was an administrative error subject to correction under 106
Code Mass. Regs. § 332.090(G).

The department suggests that, even if 106 Code Mass. Regs.
§ 332.090(G) is applicable, the 1,296 notice plaintiffs are not
entitled to correction of underpayments because their requests
were not properly worded. This suggestion does not aid the
department's cause. Subsequent to the *Ingerson* judgment, the
department formulated a policy that required the denial of any
requests for retroactive EA benefits. Prior to the receipt of the
"Notice of Appeal" forms, the department had processed and
denied several requests for a recalculation of EA benefits.
These requests explicitly sought a correction of underpayments.
The explicit requests and the "Notice of Appeal" forms were
generated as a result of *Ingerson* from the same class of plain-
tiffs. The department knew or should have known that the
1,296 notice plaintiffs were requesting a correction of under-
payments. Furthermore, the department's regulations are not
clear as to whether the specificity in applications that is argued
for in this instance is required. See 106 Code Mass. Regs.
§ 302.030 (1978) (only specific application for AFDC, other-
wise "any actual written request for assistance"); 106 Code
Mass. Regs. § 302.110 (1978) (no further application for EA,
the EA request to be noted in the case record); 106 Code Mass.
Regs. § 309.030 (1978) (no additional EA application for
AFDC recipients but non-AFDC recipients must file AFDC
application when requesting EA); 106 Code Mass. Regs.
§ 343.020(B) (no specificity required in a request for a fair
hearing). In the circumstances of this case, we conclude that
all of the plaintiffs' requests sufficiently informed the depart-
ment of the relief sought. The plaintiffs are entitled to correction
of underpayments pursuant to 106 Code Mass. Regs. § 332.090
(G).

The issue of whether the plaintiffs are entitled to attorneys'
fees and, if so, the amount of such fees is remanded to the

Superior Court for determination. The judgment of the Superior Court is affirmed.

*So ordered.*