Gants, J.
On August 27, 1999, this Court issued a preliminary injunction [10 Mass. L. Rptr. No. 22, 517 (November 8, 1999)] in this case as follows:
1. This Court DECLARES preliminarily that 106 C.M.R. §203.100(B)(2), to the extent that it makes it far harder for a caretaker caring for a child to obtain an exemption than a caretaker caring for an adult, cannot by any reasonable construction be reconciled with or interpreted in harmony with the legislative mandate set forth in St. 1995, c. 5, §110(e), G.L.c. 118, §3, and G.L.c. 18, §2(B)(d), and therefore violates those statutory provisions. While this Court recognizes that the definition of disability and the procedure to establish disability need not be identical in view of the inherent differences between children and adults, this Court finds that both the definition of disability and the procedure to establish disability must be comparable for children and adults, so that the caretakers of children and the caretakers of adults stand in comparable positions when they apply for exemptions under St. 1995, c. 5, §110(e).
2. To provide the plaintiffs with the practical relief that emerges from the declaratory relief, this Court ORDERS the Commissioner to determine the plaintiffs’ eligibility for an exemption under St. 1995, c. 5, § 110(e) in the same fashion as that eligibility would be determined if the plaintiffs cared for a disabled adult. Pragmatically, that means that the plaintiffs will be entitled to an exemption if they:
a. either provide written verification that their disabled child receives SSI or written verification from a competent medical authority (as defined in 106 C.M.R. 701.600) that their child is disabled; and
b. provide written documentation from a competent medical authority that specifies the severity of the disability, the reason that the grantee is essential to the care of the disabled person, and that the grantee is unable to be employed because she must be in the home to care for the disabled person.
3. Nothing in this Order should be construed to mean that the Commissioner is barred from issuing new regulations governing these exemptions. It only means that, if new regulations are promulgated, the definition of disability and the procedure to establish disability must be comparable for children and adults, so that the caretakers of children and the caretakers of adults stand in comparable positions when they apply for exemptions under St. 1995, c. 5, §110(e). This Order shall remain in force until new regulations in conformance with this decision become effective.
Following the issuance of this preliminary injunction, as reflected in part in this Court’s subsequent Order dated September 22, 1999, the defendant Commissioner of the Department of Transitional Assistance (“the Commissioner”) took the following affirmative steps to comply with the letter and spirit of the Court’s Order:
1. Emergency regulations were promulgated that eliminated the requirement that a child be in receipt of SSI benefits before an exemption can be obtained by a caretaker of a disabled child whose care at home for that child is essential.
2. The Commissioner, on September 29, 1999, issued Field Operations Memo 99-26B to case workers alerting them to the dictates of the Court’s Order and the subsequent changes to the Department’s regulations.
3. The Department drafted notices to current TAFDC recipients and former TAFDC recipients who, since November 1995, were terminated because of the 24-month time limit or a work sanction. The notices informed these current and former recipients that they may now be eligible for an exemption from the time limit and the work requirement, encloses the form that the child’s physician needs to fill out to qualify for such an exemption, and provides the telephone number of the Massachusetts Law Reform Institute for those seeking free legal services regarding obtaining an exemption.
4. The Department issued another Field Operations Memo regarding the amended regulation advising its case workers to contact any recipients known to them who may qualify for the exemption in view of the regulatory change.
5. The Department shared data with the plaintiffs’ attorneys concerning the number of recipients who are given exemptions because they are essential to the care of a disabled child or adult.
6. The Commissioner, on October 25, 1999, issued Field Operations Memo 99-26C to case workers regarding requests for extension of benefits after the 24-month time limit. The Memo provided:
If a nonexempt recipient applies for an extension and has not cooperated with the work requirement, the Department must look at the reasons why the recipient did not comply. If the recipient states that the reason he or she was unable to cooperate and/or was sanctioned was due to caring for a disabled child, and this is verified by a doctor’s statement, the noncooperation and/or the sanction shall not be considered when determining eligibility for an extension.
The Memo also noted that, while a recipient who receives an extension of benefits is required to work or perform work-related activities for 35 hours per week, this requirement may be waived or modified if good cause is shown and verified. The Memo declared, “A *371 recipient who is not able to the meet the exemption requirements for caring for a disabled child may still have good cause for not meeting the work requirement as part of the requirement if taking care of the disabled child prevents the recipient from engaging in the required hours of activities.”
The Commissioner, having taking these affirmative steps to address the concerns raised by the Court in its preliminary injunction, now moves to dismiss plaintiffs’ complaint as moot. The plaintiffs contend that they are due additional relief and have moved for partial summary judgment on Counts One through Three of their Amended Complaint in order to obtain that additional relief.
DISCUSSION
Background
In 1995, the Massachusetts Legislature enacted St. 1995, c. 5, §110, popularly known as the Welfare Reform Act, modifying the Aid to Families with Dependent Children (“AFDC”) program, “for the purposes of promoting the principles of family unify, individual responsibility and self-reliance and to structure financial and economic incentives and disincentives that promote such principles in the administration of said program.” St. 1995, c. 5, §110 (preamble). A central tenet of the Welfare Reform Act was to limit the receipt of welfare benefits to 24 months in any 60-month period unless the recipient falls within an exempt category or an extension of benefits is granted by the Commissioner. St. 1995, c. 5, §110(f). To reflect the legislative theme that welfare benefits were intended to be temporary, the Legislature changed the name of the administering agency from the Department of Public Welfare to the Department of Transitional Assistance (“DTA”), St. 1995, c. 5, §41, and DTA changed the name of the state program to the Transitional Aid to Families with Dependent Children program (“TAFDC”).
Under the Act, TAFDC recipients with school age children who do not fall into any exempt category are required to participate in a work program in which they work at least 20 hours per week. St. 1995, c. 5, § 110(g) and (j). If a recipient cannot find employment, she is required instead to participate in a community service program for 20 hours per week during the school hours of her children. St. 1995, c. 5, §110(j). Recipients who fail to satisfy this work requirement may be barred from receiving TAFDC benefits. Id.
The Welfare Reform Act specifically included as an exempt category “recipients who must care for a disabled child or spouse.” St. 1995, c. 5, §110(e). The Act treats a recipient who must care for a school-age “disabled child” differently from a recipient with a school-age child who is not “disabled” in at least three ways:
1.recipients who must care for a “disabled” child are exempt from the 24-month limit on the receipt of TAFDC benefits. In other words, the time that recipients devote to caring for a “disabled” child does not count towards the 24-month limit. St. 1995, c. 5, §110(e).
2. recipients who must care for a “disabled” child are exempt from the 20-hour work requirement. Id.
3. recipients who must care for a “disabled” child receive more in benefits. Those with children who are not “disabled” receive 2.75 percent less than those caring for “disabled” children. St. 1995, c. 5, §110(e) and (d).
Pursuant to regulation, the Commissioner may extend the 24-month limit for TAFDC benefits “under certain circumstances ... on a case-by-case basis.” 106 C.M.R. §203.210. In determining whether to authorize an extension, the Department considers whether the recipient has met the 20-hour-per-week work requirement. Field Operations Memo 99-26C, Oct. 25, 1999. If the recipient failed to meet that requirement, the Department must look at the reasons why the recipient failed to comply. Id. As noted earlier, “[i]f the recipient states that the reason he or she was unable to cooperate and/or was sanctioned was due to caring for a disabled child, and this is verified by a doctor’s statement, the noncooperation and/or the sanction shall not be considered when determining eligibility for an extension.” Id.
Any such extension may not exceed six months, although the recipient may apply for additional extensions. 106 C.M.R. §203.210(D). During the extension period, the recipient must work, look for work, or perform community service totaling at least 35 hours per week, unless good cause has been shown and verified justifying a modification of that requirement. 106 C.M.R. §203.210(E); 106 C.M.R. §207.190(A). Under 106 C.M.R. §207.190(A)(2), good cause may exist when:
The recipient, a member of the recipient’s immediate family, or an individual whose relationship to the recipient makes it appropriate for the recipient to provide care or support during a crisis or emergency situation, suffers a family crisis or emergency situation or other compelling circumstance, that is beyond the control of the recipient and that:
(a) demands the recipient’s immediate attention; and
(b) can only be attended to by the recipient during the hours of his or her ESP activity or employment;
106 C.M.R. §207.190(A)(2).
The Outstanding Issues
The plaintiffs maintain that their case was not rendered moot by the Commissioner’s corrective actions following this Court’s issuance of the preliminary injunction because they are still entitled to the following relief:
*372 1. Retrospective payment of the 2.75 percent in benefits that they would have received had they been deemed “exempt” because of their care of a disabled child;
2. Correction of the plaintiffs’ 24-month “time clock” by omitting those months in which the plaintiffs should have been found “exempt” because of their care of a disabled child.
The Commissioner contends that the retrospective monetary relief sought is barred by sovereign immunity and that there is no need to correct the plaintiffs’ “time clock” because of the changes she has made in the rules governing extensions. I will address each issue in turn.
1. Retrospective Payment of the 2.75 Percent in Lost Benefits
Under the doctrine of sovereign immunity, the Commonwealth may be sued for retrospective monetary relief only when it has consented to such a suit, and such consent must either “be expressed by the terms of a statute, or appear by necessary implication from them.” Ware v. Commonwealth, 409 Mass. 89, 91 (1991), quoting C&M Constr. Co. v. Commonwealth, 396 Mass. 390, 392 (1985), which itself quoted Woodbridge v. Worcester State Hosp., 384 Mass. 38, 42 (1981). The plaintiffs contend that sovereign immunity is not implicated here because they do not look to the Court to award them these retrospective benefits. Rather, they simply ask the Court to issue declaratory relief declaring in a final order what it declared preliminarily: that 106 C.M.R. §203.100(B)(2), to the extent that it makes it far harder for a caretaker caring for a child to obtain an exemption than a caretaker caring for an adult, cannot by any reasonable construction be reconciled with or interpreted in harmony with the legislative mandate set forth in St. 1995, c. 5, §110(e), G.L.c. 118, §3, and G.L.c. 18, §2(B)(d), and therefore violates those statutory provisions. They contend that, with this declaration, the Commissioner, under 106 C.M.R. §706.210, “must promptly correct underpayments to current recipients and to those who would be current recipients if the mistake causing the underpayment had not occurred.” 106 C.M.R. §706.210. If the Commissioner were to refuse to do so, the refusal may be challenged administratively and, if recourse is not obtained administratively, judicial review may be sought under G.L.c. 30A, §14. The Commissioner insists that this regulation regarding underpayment is not a source of retrospective monetary relief.
The Supreme Judicial Court, in Crane v. Commissioner of Public Welfare, 395 Mass. 435 (1985), has already decided in another context that the regulation requiring the ■ Commissioner to correct underpayments can be a source of retrospective monetary relief. The context of Crane was that, on September 17, 1981, a United States District Court had issued a memorandum and order finding that the Department of Public Welfare had violated federal law when it considered federal energy assistance in calculating state emergency assistance (“EA”). Id. at 437, citing Ingerson v. Pratt, No. 76-3255-S (D.Mass. Sept. 17, 1981). The federal court on April 12, 1982 ordered the Department to notify all who had applied for EA benefits between December 8, 1980 and September 17, 1981 of the decision in Pratt. Id. at 438. The notice sent by the Department invited those EA applicants to file a Notice of Appeal with the Department, while noting that the “availability of such procedures is disputed and has not been established.” Id. at 439 n. 6. The plaintiff class all submitted a Notice of Appeal to the Department within 30 days of receipt of that notice, seeking a recalculation of their EA benefits. Id. at 439-40. The Department denied all the plaintiffs’ requests for a recalculation, claiming that they were time barred because the administrative and judicial appeal periods were not tolled by the pendency of the class action in Ingerson. Id. at 437 and 440. The Department also claimed that federal and state regulations obligating it to correct underpayments did not apply in these circumstances. Id. at 437. The plain tiffs then sought judicial review of the Department’s action in the Superior Court pursuant to G.L.c. 30A. Id. at 440.
The Supreme Judicial Court found that the Department’s denial of any recalculation of benefits following the Ingerson decision was a final decision in an agency adjudicatory proceeding that was subject to judicial review under G.L.c. 30A. Id. at 442. The Court declared, “Whether the plaintiffs are entitled to a recalculation of EA benefits is a matter which concerns the merits of the dispute rather than the right to judicial review. Id.
At this time, the regulation regarding underpayments provided, “The Department will promptly correct underpayments to current recipients, when such underpayments result from administrative error ...” 106 C.M.R. §332.090(G) quoted in Crane at 443 n. 11. The Court rejected the Department’s argument that an illegal calculation of EA benefits was not an “administrative error," and therefore fell outside the scope of the regulation. Crane at 444. Rather, it held, “We conclude that the department’s error in computing the plaintiffs’ EA benefits pursuant to an invalid regulation was an administrative error subject to correction under 106 Code Mass. Regs. §332.090(G).” Id. at 444-45. The Supreme Judicial Court did not find it necessary to reach the issue of whether the pendency of the federal class action tolled the time periods for agency appeal, declaring, “As we conclude below that the plaintiffs are entitled to a correction of underpayments, we need not consider whether the administrative time limits affecting the department’s initial EA calculations were tolled by the pending Federal class action.” Crane at 442 n. 9.
The Commissioner argues that in a subsequent case — Massachusetts Respiratory Hospital v. Depar *373 tment of Public Welfare, 414 Mass. 330, 337 (1993) — the Supreme Judicial Court expressly disavowed its prior holding in Crane. This is not precisely accurate. In Massachusetts Respiratory Hospital, the plaintiff Hospital, which had a provider agreement with the Department of Public Welfare to furnish medically necessary services to Medicaid patients, submitted payment claims to the Department which were rejected. Id. at 331-32. The Hospital appealed the denial of these claims to a Claims Review Board, but failed to do so within the required 30-day period, and the claims were all denied as untimely. Id. at 332. The Hospital then sought judicial review of the Claims Review Board decision under G.L.c. 30A, § 14, but the Superior Court dismissed the complaint, finding that the Claims Review Board was fully justified in denying the appeal as untimely. The Hospital argued to the Supreme Judicial Court that its failure to file timely appeals with the Claims Review Board did not justify the refusal of the Superior Court judge to consider the merits of its G.L.c. 30A appeal, citing for this proposition footnote 9 in Crane, where the Supreme Judicial Court expressly refused to consider whether the administrative time limits had expired because the plaintiffs were entitled to a correction of underpayments on the merits. The Supreme Judicial Court in Massachusetts Respiratory Hospital declared:
To the extent that the Crane opinion may indicate that a court should go to the merits of a claim of agency error when that error had not been challenged by a timely administrative appeal required by administrative processes lawfully established by statute or regulation, we reject it. Such a rule of law would encourage persons not to exhaust their administrative remedies and to take their grievances directly to court. The result would unfairly undermine the role of administrative agencies and unreasonably burden judicial resources.
Id. at 337-38.
This Court does not read Crane to declare that a Superior Court may reach the merits of an agency dispute brought under G.L.c. 30A when the plaintiff failed to bring a timely administrative appeal. Rather, what the Crane Court implicitly found was that the EA recipients’ administrative appeals were timely, because they were brought within 30 days of receiving notice of the federal court ruling holding that the Department had illegally deducted federal energy assistance funds in computing EA benefits. It was this federal ruling regarding the invalidity of the Department’s regulations which produced the underpayment. Under the regulations as promulgated, there was no underpayment. The Supreme Judicial Court was not going to permit the Department to promulgate an illegal regulation, illegally calculate EA benefits in reliance on that regulation, and then deny all relief to EA recipients because they relied on the validity of that regulation and did not claim an underpayment until learning of the regulation’s invalidity.
Contrary to the Commissioner’s argument, Crane, at least with the reading given it by this Court, remains good law and controlling precedent. As a consequence, the Commissioner’s sovereign immunity argument must be rejected. The current underpayment regulation, 106 C.M.R. §706.210, imposes a duty upon the Department promptly to correct underpayments. This Court’s declaration of the illegality of the former 106 C.M.R. §203.100(B)(2), which required a child to be in receipt of SSI to be deemed “disabled, ” provides a basis for a TAFDC recipient to claim an underpayment. However, such a declaration cannot, by itself, establish an underpayment. Rather, to establish an underpayment, the recipient would first need to demonstrate to the Department that, if the Department’s regulations regarding exemptions for the care of a disabled child had conformed to the legislative mandate, the recipient would have been found “exempt” for all or part of the 24 months during which she received TAFDC benefits, and therefore would have received 2.75 percent more in benefits. The obligation to correct an underpayment could not possibly be triggered until the recipient had satisfactorily made this showing to the Department. If a plaintiff were to make such a claim for overpayment and the Department were to deny the claim, the plaintiff could seek an administrative hearing regarding this denial under G.L.c. 18, §16, which grants a right to an administrative hearing to “(a]ny person aggrieved by the failure of the department to render adequate aid or assistance under any program of aid or assistance administered by the department . . G.L.c. 18, §16. If that claim for an administrative hearing were timely made and the administrative appeal denied, the plaintiff could seek judicial review of that denial on the merits under G.L.c. 30A, §14. To the extent that this procedure permits a suit in which retrospective monetary relief for an underpayment is sought, the existence of the overpayment regulation and the statutes providing for administrative review and subsequent judicial review, viewed together, clearly reflect the Commonwealth’s consent to such a suit.
In her brief, the Commissioner appears to indicate that she will take the position that any application for underpayment by a plaintiff is time-barred, because the plaintiffs failed to challenge their receipt of 2.75 percent less in TAFDC benefits before this Court declared 106 C.M.R. §203.100(B)(2) to be illegal. This Court will not declare this case moot on that basis, for two reasons. First, such a position appears in conflict with this Court’s reading of Crane, which implicitly found a G.L.c. 30A appeal to be timely if it was timely filed after the judicial decision declaring the illegality of the Department’s regulation. Second, the Commissioner has yet to take this position because no G.L.c. 30A appeal claiming underpayment has yet been filed, *374 and this Court will not presume to predict what the Commissioner’s position will be when that moment comes. It may be that, regardless of its possible legal merit, the Commissioner may not wish to take the position that a TAFDC recipient cannot rely on the facial validity of a Department regulation but must challenge its validity immediately or lose any possibility of obtaining any retrospective relief if the regulation is ultimately declared to be illegal.
As a result, this Court concludes that the declaratory relief sought by the plaintiffs may have the consequence of providing the plaintiffs monetary relief in the form of correction of any underpayment of benefits. In view of this possible consequence alone, this case may not be deemed moot.
2. Adjustment of the Plaintiffs’ 24-Month “Time Clock”
The plaintiffs seek an injunction barring the Commissioner from counting a month against a plaintiffs 24-month time limit for TAFDC benefits if the plaintiff shows that she would have been found eligible for an exemption because of her care of a disabled child had the illegal regulation governing such an exemption — 106 C.M.R. §203.100(B)(2) — imposed requirements comparable to those for the care of a disabled adult. The Commissioner contends that the remedial steps she has already taken are adequate and that no further action is necessary or appropriate as a matter of equity. This Court finds that the Commissioner has certainly taken affirmative steps to diminish the unfair consequences of the now-discredited regulation, but also finds that the remedy sought by the plaintiffs remains necessary to provide adequate redress to the plaintiffs.
Under the Welfare Reform Act (“Act”), the Commissioner was obligated to establish criteria to be considered in determining whether a recipient’s benefits should be extended beyond the 24-month maximum period. St. 1995, c. 5, § 110(f). The Act required that one criterion shall be “the degree to which the recipient has cooperated, and is cooperating, with the agency in work-related activities.” Id. As noted earlier, the Commissioner on October 25, 1999, in Field Operations Memo 99-26C, has directed that, if the recipient verifies that the reason why she failed to cooperate with the work requirement was her need to care for a disabled child, her failure to cooperate should not be considered in determining her eligibility for an extension. While this certainly puts the plaintiffs in a better position to obtain an extension than they were in prior to the lawsuit, they are still worse off, for three reasons, than TAFDC recipients who had cared for disabled adults and were for this reason found eligible for an exemption.
First, the TAFDC recipients who were found exempt because of their care of a disabled adult probably did not even need an exception to continue to receive benefits beyond the 24-month limit because the 24-month period was stayed for the duration of their exempt status. St. 1995, c. 5, §110(e) and (f). The plaintiffs, however, having earlier been denied an exemption, may eventually have to apply for an extension to continue to receive benefits beyond the 24-month period and there is no guarantee, even with the new guidance in Field Operations Memo 99-26C, that they will be granted an extension.[1] All that the new Field Operations Memo 99-26C does is prevent the plaintiffs’ care of disabled children from effectively disqualifying them from receiving an extension, since they would be unlikely to be granted an extension if they were found to have failed to cooperate in work-related activities. The decision as to whether to grant an extension, and for how long, remains with the Commissioner, to be decided “on a case-by-case basis.” 106 C.M.R. §203.210. Historically, the likelihood of obtaining an extension is quite low. As of August 30, 1999, of the 4,490 requests for extension whose processing had been completed and which had not been terminated or withdrawn, only 382 (roughly 8.5 percent) had been approved.
Second, even if the plaintiffs beat these odds and obtained extensions, those extensions may not last very long; the maximum extension is limited to six months, although multiple extensions maybe sought. 106 C.M.R. §203.210(D). It is very unlikely that the extensions would last 24 months.
Third, the TAFDC recipients who had previously enjoyed an exemption because of their care of a disabled adult and whose 24-month period had commenced because their exemption had ended were obliged to work only 20 hours per week. St. 1995, c. 5, §110(g) and (j). If the plaintiffs obtained an extension of their 24 month period, theywouldberequiredtowork35 hours per week unless good cause was shown and verified justifying a modification of that requirement. 106 C.M.R. §203.210(E); 106 C.M.R. §207.190(A). As noted earlier, good cause is narrowly defined. Under 106 C.M.R. §207.190(A)(2), good cause may exist when:
The recipient, a member of the recipient’s immediate family, or an individual whose relationship to the recipient makes it appropriate for the recipient to provide care or support during a crisis or emergency situation, suffers a family crisis or emergency situation or other compelling circumstance, that is beyond the control of the recipient and that:
(a) demands the recipient’s immediate attention; and
(b) can only be attended to by the recipient during the hours of his or her ESP activity or employment;
106 C.M.R. §207.190(A)(2). In short, unless a plaintiff can meet the severe requirements for good cause, she would have to work 35 hours per week during an extension while her counterpart, identical in every respect except that she cared for a disabled adult rather than a disabled child, would have to work only 20 hours per week.
*375 In view of these significant differences, it is simply not accurate for the Commissioner to contend that no adjustment of the plaintiffs’ time clocks is necessary because the plaintiffs may qualify for an extension. If the plaintiffs are entitled to such an adjustment, they would likely have time left on their 24-month clocks and would not need to seek an extension, with its more arduous work requirements. Only with such an adjustment can TAFDC recipients who cared for disabled children be put in the equivalent position of recipients who cared for disabled adults.
Appropriate Additional Relief
Having found that the plaintiffs may be entitled to a correction of any underpayment of past benefits and that allowing the plaintiffs to apply for an extension of benefits is not the same as adjusting their 24-month “time clocks,” it is plain that the Commissioner’s Motion to Dismiss must be DENIED. The Commissioner’s actions to date, while commendable, are not sufficient to moot this case.
Since the case is not moot, it is equally plain that the plaintiffs are entitled to partial summary judgment on their request for declaratory relief in Counts One through Three of their Amended Complaint. The Declaratory Judgment Act, G.L.c. 231 A, confers on this Court the power to “make binding declarations of right, duty, status, and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen . . .” G.L.c. 231A, §1. This power specifically is extended to declarations regarding the interpretation and application of state regulations: “Said procedure under section one may be used in the superior court to enjoin and to obtain a determination of the legality of the administrative practices and procedures of any . . . state agency or official which practices or procedures are alleged to be in violation of . . . the laws of the commonwealth . . . which violation has been consistently repeated.” G.L.c. 231 A, §2.
There is no factual dispute that needs to be decided regarding the legality of 106 C.M.R. §203.100(B)(2), which required that a TAFDC recipient who claimed to be essential to the care of a disabled child “must provide verification that the disabled child is in receipt of SSL” 106 C.M.R. §203.100(B)(2). Nor has this Court changed its view since it preliminarily declared this regulation to be illegal on August 27, 1999. See Findings of Fact and Conclusions of Law on Plaintiffs’ Motion for a Preliminary Injunction, August 27, 1999 [10 Mass. L. Rptr. 517). Nor does the fact that this regulation is no longer in effect negate the need for a final declaratory judgment regarding the legality of this regulation. A declaratory judgment may make binding declarations of right “after a breach or violation thereof has occurred,” G.L.c. 231A, §1, and, as discussed at length above, there are important practical consequences to such a declaration. Indeed, without such a declaration, the Commissioner may contend that the earlier 106 C.M.R. §203.100(B)(2) was lawful but abandoned as a matter of policy, thus obliterating any right that the plaintiffs may have either to a correction of underpayments or to an adjustment of their 24-month “time clock.” It is important for this Court to declare, as a final declaratory judgment, that 106 C.M.R. §203.100(B)(2) was illegal from the moment it was promulgated, so that those who were wronged by this illegality may seek any recourse due to them. Consequently, this Court declares as a final declaratory judgment what it declared preliminarily on August 27, 1999:
This Court DECLARES as a final declaratory judgment that 106 C.M.R. §203.100(B)(2), to the extent that it makes it far harder for a caretaker caring for a child to obtain an exemption than a caretaker caring for an adult, cannot by any reasonable construction be reconciled with or interpreted in harmony with the legislative mandate set forth in St. 1995, c. 5, §110(e), G.L.c. 118, §3, and G.L.c. 18, §2(B)(d), and therefore violates those statutory provisions. This Court further declares that 106 C.M.R. §203.100(B)(2) has been in violation of those statutory provisions since this regulation was first promulgated. While this Court recognizes that the definition of disability and the procedure to establish disability need not be identical in view of the inherent differences between children and adults, this Court finds that both the definition of disability and the procedure to establish disability must be comparable for children and adults, so that the caretakers of children and the caretakers of adults stand in comparable positions when they apply for exemptions under St. 1995, c. 5, §110(e).
The plaintiffs, however, seek more than declaratory relief on summary judgment. They also seek an injunction (1) requiring the Commissioner to allow the plaintiffs to use existing agency procedures to correct underpayments resulting from the Department’s illegal regulation; and (2) barring the Commissioner from continuing to count a month against a plaintiff’s 24-month “time clock” if the plaintiff shows that she met the lawful requirements for an exemption during that time and requiring the Commissioner to use existing agency procedures to correct a plaintiffs “time clock” if such a showing is made. The practical effect of this injunction would be that the plaintiffs could apply to the Commissioner for a correction of underpayments and an adjustment of their 24-month “time clock” by establishing that, for some period in the past, they would have been eligible for an exemption because of their care of a disabled child but for the illegal regulation. If the Commissioner were to deny a plaintiff the requested relief, either because she found that the plaintiff would not have been eligible for the exemption or because she for some reason is unwilling to correct the underpayment or adjust the “time clock,” the plaintiff could seek an administrative hearing under G.L.c. 18, §16 and, if this hearing fails to provide *376 satisfactory relief, the plaintiff could seek judicial review under G.L.c. 30A, §14. This Court finds the requested injunctive relief to be appropriate, since it is simply the natural consequence of the declaratory judgment being applied to existing agency procedures. However, in order to ensure closure of these issues, this Court will require that any application by the plaintiffs for a correction of underpayments or an adjustment of their 24-month “time clock” must be submitted to the Commissioner no later than 90 days from the date of this Order.
The final matter that must be addressed is the plaintiffs’ motion for class certification, which remains pending. This Court assumes that the Commissioner will comply with the law as declared by this Court even when the individuals involved are not plaintiffs in this action. Massachusetts Coalition for the Homeless v. Secretary of Human Services, 400 Mass. 806, 825 (1987) (“ithasbeen our practice to assume that public officials will comply with the law declared by a court . . Doe v. Registrar of Motor Vehicles, 26 Mass.App.Ct. 415, 425 n. 18 (1988) (“courts . . . appropriately assume that public officials will act in accordance with their judicially defined duties, even when the individuals involved are other than the plaintiffs in the original action”). So far in this litigation, the Commissioner has promptly and affirmatively complied with the law as declared by this Court even when the individuals involved were not plaintiffs in this action.
This Court has no reason to believe that the Commissioner will pursue a different course now. If the Commissioner voluntarily
(1) provides adequate notice to the putative class that they, too, may apply for a correction of underpayments and an adjustment of their 24-month “time clock” provided such an application is received within a fixed and reasonable time frame, and
(2) provides them with the same existing agency procedures to obtain a correction or adjustment if they can establish that, for some period in the past, they would have been eligible for an exemption because of their care of a disabled child but for the illegal regulation,
then it is not clear what need would remain for class certification. Cf. Crane v. Commissioner of Public Welfare, 395 Mass. at 438-39 & n.6 (discussing notice to the certified class ordered by the federal court in Ingerson). Therefore, this Court will leave pending the motion for class certification until this Court can determine, in view of the Commissioner’s future actions, whether there is any need for class certification. The parties shall file concise supplemental briefs with the Court on this matter no later than March 31, 2000, discussing the consequences of the Commissioner’s conduct in the wake of this Order on the issue of class certification.
ORDER
For the reasons stated above, this Court ORDERS as follows:
1. The defendant Commissioner’s Motion to Dismiss is DENIED.
2. The plaintiffs’ Motion for Partial Summary Judgment on Counts One, Two, and Three in the Amended Complaint is ALLOWED as follows:
a. This Court DECLARES as a final declaratory judgment that 106 C.M.R. §203.100(B)(2), to the extent that it makes it far harder for a caretaker caring for a child to obtain an exemption than a caretaker caring for an adult, cannot by any reasonable construction be reconciled with or interpreted in harmony with the legislative mandate set forth in St. 1995, c. 5, §110(e), G.L.c. 118, §3, and G.L.c. 18, §2(B)(d), and therefore violates those statutory provisions. This Court further declares that 106 C.M.R. §203.100(B)(2) has been in violation of those statutory provisions since this regulation was first promulgated. While this Court recognizes that the definition of disability and the procedure to establish disability need not be identical in view of the inherent differences between children and adults, this Court finds that both the definition of disabiliiy and the procedure to establish disability must be comparable for children and adults, so that the caretakers of children and the caretakers of adults stand in comparable positions when they apply for exemptions under St. 1995, c. 5, §110(e).
b. This Court permanently enjoins the Commissioner to allow the plaintiffs to use existing agency procedures to correct underpayments resulting from the Department’s illegal regulation, provided the plaintiffs apply for a correction of underpayments no later than 90 days from the date of this Order; and
c. This Court permanently enjoins the Commissioner from continuing to count a month against a plaintiffs 24-month “time clock” if the plaintiff shows that she met the lawful requirements for an exemption during that time and requires the Commissioner to use existing agency procedures to correct a plaintiffs “time clock” if such a showing is made, provided the plaintiffs apply for an adjustment of their “time clock" no later than 90 days from the date of this Order.
3. This Court will leave pending the motion for class certification until this Court can determine, in view of the Commissioner’s future actions, whether there is any need for class certification. The parties shall file concise supplemental briefs with the Court on this matter no later than March 31, 2000, discussing the consequences of the Commissioner’s conduct in the wake of this Order on the issue of class certification.

This Court is aware that the Department found plaintiff Tracey Miller eligible for a caretaker exemption as of April 28, 1999. However, if and when her exemption ends, her 24-month clock will resume ticking and the time period will expire earlier than it would have had she obtained her exemption prior to April 28.

I remain grateful for the exceptional quality of briefing and oral argument provided by counsel for both the plaintiffs and the defendant.